UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH BOUDREAUX, JR. )
)
    Plaintiff, )
) Case No.
v. )
)
CHARTER COMMUNICATIONS, INC. )
d/b/a SPECTRUM (f/k/a BRIGHT HOUSE )
NETWORKS, LLC), )
)
    Defendant. )

### PLAINTIFF'S COMPLAINT

Plaintiff, KEITH BOUDREAUX, JR. ("Plaintiff") files this lawsuit for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant, CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM (f/k/a BRIGHT HOUSE NETWORKS, LLC) ("Defendant"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

### JURISDICTION AND VENUE

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the laws of the United States.

2. This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. Defendant conducts business in Davenport, Polk County, Florida.

1

4. Venue and personal jurisdiction in this District are proper because Defendant transacts business in this District, and a material portion of the events at issue occurred in this District.

## PARTIES

5. Plaintiff, is a resident of Davenport, Polk County, Florida

6. Defendant is headquartered in Stamford, Fairfield County, Connecticut.

## FACTUAL ALLEGATIONS

7. Within four (4) years of Plaintiff filing this Complaint, Defendant called Plaintiff's cellular telephone numbers, ending in 2109 and 4382.

8. All of the telephone calls Defendant made to Plaintiff were an attempt to get Plaintiff to sign up for their services.

9. None of the calls Defendant made to Plaintiff were for an emergency purpose.

10. Within four (4) years of Plaintiff filing this Complaint, Defendant called Plaintiff's cellular telephone numbers from at least the following telephone numbers: 855-222-0102.

11. The following telephone number is one of Defendant's many telephone numbers: 855-222-0102.

12. Since Defendant began placing calls to Plaintiff, Plaintiff spoke with Defendant several times and requested that Defendant stop calling Plaintiff's cellular telephone.

13. In or around 2014, Defendant was calling Plaintiff's cellular telephone number, ending in 2109.

14. In or around 2014, Plaintiff repeatedly told Defendant that he was not interested in their services and requested Defendant to stop calling Plaintiff's cellular telephone.

15. Despite these repeated requests, Defendant continued to call Plaintiff.

16. In or around October 2017, due to the incessant amount of calls Plaintiff was receiving on his cellular telephone, he changed his telephone number to xxx-xxx-4382.

17. Despite Plaintiff changing his cellular telephone number, in or around November 2017, Defendant began calling Plaintiff's cellular telephone number, ending in 4382.

18. In or around 2017, Plaintiff again told Defendant he was not interested in their services and requested Defendant to stop calling Plaintiff's cellular telephone.

19. Despite Plaintiff's repeated requests that Defendant stop calling Plaintiff's cellular telephone, Defendant continued to call Plaintiff's cellular telephone..

20. On several occasions when Plaintiff has answered Defendant's calls, Plaintiff is met with "dead air," whereby no person was on the other end of the line, and then after a few moments, he is connected with a live representative.

21. Prior to calling Plaintiff's cellular telephone numbers, Defendant knew the numbers were cellular telephone numbers.

22. All of the calls Defendants made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

23. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone.

24. Even if at one point Defendant had Plaintiff's permission to call Plaintiff's cellular telephone numbers, Plaintiff repeatedly revoked this consent.

25. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

26. Within 4 years of Plaintiff filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiff's cellular telephone.

27. Within 4 years of Plaintiff filing this Complaint, Defendant called Plaintiff's cellular telephone in predictive mode.

28. Within 4 years of Plaintiff filing this Complaint, Defendant left pre-recorded voicemail messages for Plaintiff on Plaintiff's cellular telephone.

29. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

30. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

31. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

32. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

33. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

34. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

35. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

36. While Defendant called Plaintiff's cellular telephone, Plaintiff's cellular telephone line was unavailable for legitimate use during the unwanted calls.

37. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

38. The dead air that the Plaintiff experienced during the phone calls he received is indicative

of the use of an automatic telephone dialing system. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

39. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a. Invading Plaintiff's privacy;

    b. Electronically intruding upon Plaintiff's seclusion;

    c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;

    d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone;

    e. Causing Plaintiff to expend needless time in receiving, answering, and attempting

to dispose of Defendant's unwanted calls.

## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

40. Defendant's conduct violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, KEITH BOUDREAUX, JR., respectfully requests judgment be entered against Defendant, CHARTER COMMUNICATIONS, INC. *d/b/a* SPECTRUM (*f/k/a* BRIGHT HOUSE NETWORKS, LLC), for the following:

41. As a result of Defendant's negligent violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).

42. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) and 47 U.S.C. 227(b)(3)(C).

43. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

44. Any other relief that this Honorable Court deems appropriate.

|  |  |
|---|---|
| April 24, 2018 | RESPECTFULLY SUBMITTED,<br><br>By:/s/ *[signature]*<br>Shireen Hormozdi<br>Hormozdi Law Firm, LLC<br>1770 Indian Trail Lilburn Road, Suite 175<br>Norcross, GA 30093<br>Tel: 678-395-7795<br>Fax: 866-929-2434<br>shireen@agrusslawfirm.com<br>shireen@norcrosslawfirm.com<br>Attorney for Plaintiff |